et al. Mr., is it Pradhan? Pradhan. For the appellant. And Ms. Byers? Yes. All right. Are you ready to proceed? Yes, ma'am. All right. If you would, come forward and state your name. You may proceed. Justices, may it please the Court, I am Ruben Pradhan, attorney for Mr. John Morrison. The questions before the Court today concern long-established rules of deed construction, defending the stability of titles, and the correct implementation of the laws governing the Illinois Consumer Fraud Act. We are requesting that this Court find, as a matter of law, that Ms. McShann's 1995 quick-claim deed vested an immediate, fee-simple interest in her three children and reserved for herself a life estate, and to reverse and remand the consumer fraud issue to the lower court for any necessary period. The cardinal goal when construing a quick-claim deed is to ascertain the grantor's intent. Rosamond Shann's 1995 quick-claim deed vested an immediate, fee-simple interest in her three children and reserved for herself a life estate. That was her intent. The language indicating as such is without ambiguity, and to hold otherwise would destroy the stability of titles and the powers to convey property that are protected by the long-held laws of this State. Plaintiff also alleges no ambiguity in the deed, and First American Title, employed by plaintiff, didn't indicate any ambiguity in its title report when it listed that John Morrison and his siblings were tenants in common on the property. The Supreme Court of Illinois states that when there is no ambiguity in a deed, the courts look within the four corners to ascertain the intent of the grantor. The Supreme Court also says that when a deed without any limiting language in the conveying clause conveys property, that conveyance is deemed to have granted a fee-simple estate. The deed uses the language conveys in quick-claims, and there is no limiting language in the conveyance clause, so it deems a fee-simple estate. At the bottom of the deed, beneath the words of conveyance, is a clause that states, reserving that to the grantor in a State for and during her natural life, sorry, during the term of her natural life, whereby grantor shall have full use and control thereof during her natural life. Counsel, have you found any case that uses that language in a deed, full use and control? Not the language full use and control, Your Honor, but the court in Walker v. Sturgis has a holding that indicates that a life estate will not be enlarged into a fee merely because there is a power of disposition, no matter how general or extensive. And then applying that principle to two specific Supreme Court cases, one, Strickland v. Strickland, where the Supreme Court held that the language absolute control only modified the life estate and did not enlarge the life estate into a fee and did not give the life tenant the power to use the corpus of the property. And then the second case, Chicago Railroad v. Vaughn, the Supreme Court held that a deed using the language sole control use and occupation unquestionably left the grantor with only a life estate in the property. That particular case was not, that was not a contested issue, the interpretation, I believe. The 1903 case, was it? I believe the Chicago PNSLR v. Vaughn case is from 1916. I'm looking at Vaughn, 1903. Or 1903, yes. And that was when, when I read that case and I had to read it a number of times, it didn't appear that really the interpretation was even contested in that case, was it? I don't believe that the interpretation was contested, but I believe that the effect of the language the court still spoke to. So it looks to me like the word full is the operative word. Not use and control, but the word full. Is there any case law that has any language other than the sole use and control, the case that you just mentioned? Well, there's Strickland v. Strickland which says absolute, which we would contend is similar in nature to full. And I'm sorry, what was the site for that case? I'm sure it's in your brief, but if you could give it to me again. Strickland v. Strickland, Your Honor. I believe that was the 1916 case. 19 what? 16 case. And do you have the site by chance? I do not have it in front of me, but it is cited to an hour. That's fine. I'll find it in the brief. Thank you. We're actually looking at the rebuttal. Sole use could be referring to an individual, her sole use, as opposed to the three children. Full use could mean encumbering the property or simply putting on a new roof or painting it whatever color I want, right? Well, Your Honor, yes, yes, Your Honor. Full use could mean the use of the property within the expansion of the life estate or within the confines of the life estate. Walker v. Sturgis holds that no matter what the general or extensive nature of the power of disposition is, it cannot enhance a life estate into a fee. So Strickland basically says, tell me again what you just said before Justice Bollinger asked you the question about? The exact language in Strickland? Yeah. It says absolute control. Okay. And the holding stood for the proposition that? That the words absolute control would only modify the life estate and did not enlarge the life estate into a fee and did not give the life tenant the power to use the corpus of the property. So you think absolute is stronger language than full? We would argue that absolute could be stronger language than full. At the very least, I would contend that they have a similar effect. Is there any extrinsic evidence as to the grantor's intent presented in that Strickland case or did the court strictly confine itself to the language within the deed? Your Honor, based on my recollection, they initially looked within the four corners of the deed. I'm unaware if at that point they found some term ambiguous and looked outside to assist with that. But my recollection is that it was ascertained from the four corners of the deed. Can we talk about then the burden of proof here? So these are cross motions for summary judgment. Correct me if I'm mistaken here. In your client's motion, first of all the bank's motion, essentially asserted that there was no genuine issue of material fact, that there was a mortgage and that the loan was in default and they were seeking to foreclose. And then your client's motion was filed that asserted essentially what the affirmative defense was in the answer. And that was that the mortgage that the bank held was, it only adds to a life estate mortgage. And it was based on your interpretation of that deed. And so in terms of the burden of proving that defense, that was an affirmative defense, correct? Correct, Your Honor. Okay. So was it your client's burden then to prove that by way of its motion for summary judgment? Your Honor, we would find, or Your Honor, yes, I would believe that as an affirmative defense and in the posture of motion for summary judgment, it would be the bringer of the affirmative defense's burden of proof to raise the affirmative defense. But also there is the burden of proof on the plaintiff raising the motions for summary judgment to meet the requirements that they be entitled to the judgment as a matter of law and also that there be no uncontroverted facts in order to get that summary judgment ruling. Do you agree that there are no uncontroverted facts here? On the first issue, we would say that we are entitled to motion for summary judgment and there are no uncontroverted facts in that case. Turning to the recording of the deed. Ms. McChan's deed was recorded the day after execution. Reporting shows an intention that the property be conveyed immediately. In Magichek v. Magichek, the court held that the execution of reporting showed an intention on the grantor's part that the deed become legally operative at that time. I'm going to jump ahead for just a moment. Sure. Because obviously it was recorded. I mean, that's certainly the case. What weight do we put on the fact that she applied for the mortgage and then subsequent to that, what weight do we put on the recorded mortgage with the last page that lists the names of the children with the legal description, I think? Right, Your Honor. What is the weight that we place on those? So, Your Honor, I will jump ahead to the Supreme Court case of Gibbs v. Gerdes. In that case, a case that we believe is factually on point, the Supreme Court held that even if a life tenant signed a mortgage and stated that she had fees simple to the mortgagee, her statement does not enlarge that estate to a fee and the mortgage extinguished with the death of the life tenant. So, in that way, the deed is only conveyed to her life, reserved for her life estate. After the reservation of the life estate, the recording of the deed, the weight of the mortgage being recorded and the weight of any external factors, if the court were to look at the external factors and jump outside of the four corners of the deed to look at the external factors, then the weight that would be placed, at least on the fact that she got a mortgage and any representations on the mortgage are not to be considered in the fact that they would affect the life estate and convert it into a fee. Did you say that was the Gibbs case? Gibbs v. Gerdes case, Your Honor, yes. The 1995 quick claim deed is not a testamentary deed. A testamentary deed is by its very nature revocable. Rosamund Shand's quick claim deed was not revocable. Plaintiff points to the Transfer on Death Instrument Act to assert that Rosamund Shand did not convey title in 1995. This is incorrect. First, the Transfer on Death Instrument Act did not exist until 17 years after the recording of Ms. Shand's deed. Second, it does not meet the Transfer on Death Instrument Act requirements. There are no credible witnesses that signed and had their signatures notarized on the deed. It does, however, meet a different statutory requirement. It meets the Illinois Conveyances Act statutory requirements for a quick claim deed because the deed uses the language conveys in quick claims, two or three children as tenants in common all interest in the following described real estate. Second, Ms. Shand executed and notarized the deed. And finally, the deed was recorded the day after it signed. At this point, I'd like to turn to the consumer fraud issue. We are requesting that this Court reverse and remand the question of consumer fraud to the lower courts. As a matter of law, the plaintiff was not entitled to summary judgment. The trial court inappropriately held that Mr. Morrison needed to prove three additional elements not in the Consumer Fraud Act in order to assert a claim. It held that he needed to be a consumer, that he had some contractual or legal obligation to pay the plaintiff, and that his payments must be involuntary. This is inappropriate as a matter of law as Mr. Morrison need not be a consumer and whether the payments were obligated or voluntary have no bearing in those five elements. The Downers-Grove line of cases indicates that a claimant can be any person who meets the five elements of the Consumer Fraud Statute. Those five elements are a deceptive act or practice by the defendant, the defendant's intent that the plaintiff rely on those deceptions, the occurrence of the deception in the course of conduct involving trade or commerce, actual damage to the plaintiff occurring, and the damage being proximately a cause by that deception. None of these elements require an obligatory relationship to pay and none of these elements require that Mr. Morrison make these payments non-voluntarily. We allege that we have facts to support these five elements, but again we are not asking the court to decide these facts today. On this account, we are merely asking that this court find that plaintiff was as a matter of law wrongfully awarded summary judgment and that the issue of consumer fraud be remanded for further evidentiary hearing if necessary. The Notice of Appeal indicates that we indicate this on Notice of Appeal by selecting two boxes. One to change the summary judgment on the issue of the deed and another where we ask the court to reverse the motion for summary judgment and remand for further finding. This reverse and remand box indicates our request pertaining to the order granting motion for summary judgment on the consumer fraud issue. Also, the brief asks for specific forms of relief. One, to reverse the trial court's granting of count one of plaintiff's motion for summary judgment. Two, to reverse the trial court's granting on count two of plaintiff's motion for summary judgment. And three, to reverse the trial court's denial of count one on Mr. Morrison's motion for summary judgment. These reversals then require the court to vacate the orders granting foreclosure and confirming the sale of the property, which are listed in the Notice of Appeal. In conclusion, Your Honors, we are asking that this court uphold the long-established canon of deed construction and the case law surrounding consumer fraud by finding that as a matter of law, Rosa McShann's quick claim deed immediately vested a fee-simple interest to Mr. Morrison and his siblings and reserved for herself a life estate. And to remand the question of consumer fraud back down to the trial court for further evidentiary hearing. Before you, I have one more question on Gibbs, and I need to look at that case again. But you said that that court held that the life estate order did not enlarge the fee by taking out a mortgage or something to that effect. Now, was it undisputed in that case that the deed actually conveyed a life estate? Or was it disputed as to the grantor's intent based on the language within the deed in Gibbs? I believe in that case it was not disputed as to whether or not it conveyed a life estate. It was disputed as to what the effects of the mortgage were on the life estate. Okay. So then the subsequent action, how did that impact the undisputed life estate in the deed? And the court held that it did not. It did not enlarge it.  So it did not, that wasn't relevant from the standpoint of determining the intent of the grantor the action of taking out the mortgage in Gibbs as that issue is in this case. Correct? My understanding of the question, Your Honor, and I'm sorry if I misunderstood this. It may have been a poorly asked question. Is that you are asking if in the Gibbs case there was the issue of whether or not the effect of the mortgage on the estate not affecting the intent.  So I would say that the effect is still the same here. The effect is that it cannot enlarge a life estate into a fee, the mere fact of retaining a mortgage or even representing to the mortgagee that you had fee simple. As so far as the intent, the intent it doesn't necessarily speak to the intent of the grantor but for to say that it could be the mortgage cannot serve as something that enlarges the fee or estate. Okay. Thank you. Thank you. All right. Thank you. I'll turn it over to counsel. If you would, when you come forward, state your name, please. Good afternoon. May it please the Court. My name is Julie Byers and I'm here on behalf of the Appellee Associated Bank. And I'd like to start first with respect to some of the questions that were asked. With respect to the Chicago P&S LR Company v. Vaughn case, that is a Supreme Court decision from 1903. The issue of whether or not the deed in that case conveyed a life estate was not contested. There was no issue about that. That was not what that case was about. It was about what was going to happen with the railroad right-of-way that was on a piece of that grant. The Strickland v. Strickland case is 271 Illinois 614. It is a Supreme Court case from 1916. And in that case, the Court held that it was a life estate and that the Court held no power of sale in that case because it was just a life estate in that matter. But the issue of the life estate was not hotly contested in that case. But that was the one with the language, though, that was absolute. That is correct. So what is the difference between the term absolute and full? I mean, what impact? So I think full is a greater grant. I think full in this case also coupled with the delivery issues that we have in this case. So here, we can't just look at the deed. We also have to look at the issues of execution and delivery. And that's what the trial court looked at in reaching its decision. It looked not only at the four corners of the deed, but what Ms. McShan's intent was with respect to when title in this case would be delivered. And the Court specifically rejected the language in Walter v. Sturgis. Again, looking at the four corners of the deed, the Court found that the language in that case was not analogous to the language in this case. It was much weaker language. And it also looked at delivery. What was Ms. McShan's intent with respect to delivery? And that's where the Court looked outside the four corners of that deed to determine what Ms. McShan's intent was. And in looking at that, the Court relied heavily, the trial court relied heavily on the decision in Steinke v. Stonska, and I apologize if I'm saying that incorrectly, which is an Illinois Supreme Court case from 1936. And it had very similar facts as are before the Court in this case. And in Steinke, the grantor contacted her attorney and said that she wanted to convey her property to her daughter and her grandson in equal shares. And that she wanted to give her son $2,000 and wanted to keep her property until after her death. Upon her attorney's advice, she executed a deed to her daughter and grandson, which was immediately recorded and delivered to her daughter. And she also executed a note and mortgage to her son in the amount of $2,000. Later, Ms. Steinke changed her mind on the note and mortgage to her son and reduced the amount of that loan from $2,000 to $500. When Ms. Steinke died and the son found out about the deed and the rest of the transaction, he filed suit. And the trial court said that the documents should be set aside as they were not absolute dispositions of her property. They were ambulatory and therefore not effective until her death. And they constituted testamentary dispositions. And because they were not properly signed as testamentary dispositions, they found that the grant, the whole transaction failed. And then the case went up on appeal to the Supreme Court. And the Supreme Court agreed that the documents were testamentary dispositions based on the fact that Ms. Steinke intended to retain control with respect to the property as shown by the fact that she modified that note and mortgage after the original documents were signed. But there was no modification here, right? I mean, there was no modification of the quitclaim deed or anything like that, correct? In this case? Oh, correct. There was no modification. No modification. And so, you know, the court also looked at the fact that she tried to take a mortgage on the property. But isn't the intent, the intent at the time that she signed the deed, her intent would have been the intent at the time she was the grantor. Would you agree? I think that with respect to delivery, you can look at later factors to show what the intent was with respect to the issue of delivery when that deed was equaled. But she never wrote another deed. That's correct. Because this was prepared by a lawyer. She never went back to the lawyer's office. There's no evidence that she went back to the lawyer's office. And she went and she took out a mortgage, correct?  And there was title work done. And there was actually, I think on the mortgage, the children's names were listed. Is that correct? So, with respect to that, Your Honor, if I can address that briefly. So, counsel indicated that First American was Associated Bank's employee. That's not the case. First American was an independent title company that conducted this initial search. But they rely on that. Right. I mean, the bank relies on the title company's title search. And the title search that we have as an exhibit was the names of the children with the legal description, correct? So, yes, in the legal description to the put claim deed, it does list, and I have the deed here. I'm looking at the mortgage. And it lists her as the mortgagor. Right. But then when you look at the title work, the title work attached. The legal description?  I mean, the typical things you see, right? Right. So, I mean, I don't, I'm having a hard time understanding that we're determining intent from a mortgage that was taken out how many years later versus the deed that was executed many, many years before. She never changed the deed, never went back to change the deed. Right. She just took out a mortgage because she needed money to fix up the property. Right. So, Your Honor, if you look at the distribution of the funds from this particular transaction is a part of the record. Okay. And when you look at that, the funds from this loan were used to pay a prior mortgage to Associated Bank. There are entries on the disbursement sheet which A prior mortgage held by her, correct? Correct. But it was made after the records in the recorder's office show that that was made after this quick claim deed was executed. What was made after the? These two prior loans that were paid off as a result of this particular mortgage loan. So, the disbursement sheet, which is at page C447 of the record, shows that the funds distributed in the amount of $73,026. $27,011.79 went to Associated Bank and $19,135.64 went to Associated Bank. So, those were mortgages that were made after the deed that Ms. McShann executed in 1995 and before this mortgage. So, Ms. McShann, prior to the deed of that mortgage, correct?  Which, our argument is, it shows that she did not intend to deliver title to Mr. Morrison and his siblings until her death. But I think that that's my question, though. We don't know her intent. If it's ambiguous, is what you're essentially saying, that we have to look at her intent at the time of the preparation of the deed, at the time that these documents were drafted. Was it done in conjunction with probate estate work, right? Which would lend us to agree that it's testamentary. I'm not sure that we get to look at the time that she takes out mortgages on the property later on. I'm guessing that she wasn't real sophisticated in these matters, correct? I don't know that, Your Honor. We just don't know. We just don't know. The burden is on which party to prove the interpretation of the deed. So, with respect to a motion for summary judgment filed by a lender, you know, the lender does have to show that there's no question of fact that it's entitled to a sling, and that it's entitled to the sum's due under the loan document. So, I think it's a mixed question. I think the plaintiff has to prove that that's a valid mortgage lien on their property. And I think the defendants have to prove, if they've raised an affirmative defense regarding the fact that this was a life estate rather than a testamentary transaction, they have to prove that. I think it's a mixed question, and I think the burden really is on both parties with respect to those different elements in the case. Including the interpretation of the deed? Or the issue of the grantor's intent? I would argue that the issue of the grantor's intent would be, the burden would be on the defendant. Because they have raised that in the affirmative defense. Thank you. You're welcome. I found these cases that are cited in the briefs hard to get through as well. They're very dense, and they're very fact specific. And a hundred years old. And a hundred years old. There isn't, as far as I could find, and I'm sure counsel would have cited it, if they could find more recent cases on this issue. But that begs the question. That's because title work is prepared? And banks rely on title work? Sure. But that's concerning. From a practical standpoint, the reason that there is no case law on this is because this generally doesn't happen in a society where title work is conveyed and banks rely on title work. I'm not sure how she got free mortgages with this quick fund deal. Sure. And what I would say is that testamentary dispositions prior to 2012 were problematic. They were problematic. But then, arguably, the legislature enacted the Transfer on Death Instrument Act to prevent further litigation regarding these deeds and transactions and gave specific parameters for lawyers to prepare proper documentation so that there wasn't any further litigation regarding these transfers. So, I would argue that there's also federal case law because there are acts now that deal with these transfers. But I would just, again, direct the Court to the Schwanzpeck case, if I can ever say it correctly, and the fact that the Court there did look at the issue of delivery outside of the time that that deed was executed. They looked at her post-execution acts with respect to her intent as to when title was to be delivered. And because she did continue to exert control over the property, over her home, they found that it was a testamentary disposition. And again, because it wasn't executed correctly, they found that the testamentary disposition was void, but they did find that it was a testamentary disposition. And they used the word ambulatory. And they, again, they really focused on the fact that her son, or that Ms. Stanka changed the amount of the loan from $2,000, or not loan, the mortgage executed at the same time of the deed, that she modified that from $2,000 to $500. What do you say to counsel's discussion about that Gibbs case? He said that you can't expand a life estate. And I'm glad you brought that up, Your Honor. That's if it is a life estate. That's if it is a life estate. If it's a life estate, then you can't expand it by doing things later that would show We have to determine if it's a life estate, right? We get that job. But taking out a mortgage in and of itself does not expand a life estate if we were to determine that it were, in fact, a life estate. That's correct. It does not. Which is why I kind of asked the question about how does that impact, looking at that, how does that impact her intent from writing the deed? So, lots of competing questions. Lots of competing standards, competing questions. Um, it's So, in Gibbs, though, the intent of the grantor was not at issue. It was undisputed that her intent was to create, or his intent, was to create a life estate. And then the grantor takes the mortgage out and the court holds that doesn't expand Right. Expand it beyond the life estate. Right. And then we get back to the cases then dealing with is it your position that this deed is ambiguous or unambiguous? It's our position that this deed is unambiguous based on the language full control. Okay, so unambiguously claiming not for the life estate. Right. Okay. Right. That's correct. Full control, unambiguous absolute control equals life estate. That's your position. My position is that you have to in this case, you have to look at the issue. It's not ambiguous. It's not ambiguous. Full control. No life estate. But in Gibbs, absolute control equals life estate. Uh, Gibbs, I don't know. Oh, I'm sorry. Strickland. I apologize. I didn't mean to go for a liar. Yes. Strickland, absolute life estate. Absolute control during her lifetime. Not ambiguous. And in that case, I do not believe that the issue of whether or not that was a life estate was contested. Understood. But I'm just trying to get full and absolute. So we're not sure if the grantor's intent in Strickland was contested at issue? But I don't believe it was, Your Honor. I think they were looking at whether whether some subsequent issues expanded the life estate. I made myself a chart, but I have to confess as I stand here. Sure. We'll give you another minute if you want to wrap it up. Oh, no. We've asked a lot of questions. Sorry. No, of course. So with respect to the Consumer Fraud Act claim, we've argued in our brief that that claim was waived based on the notice of appeal in the docketing statement. But again, with respect to that claim, our contention is the trial court correctly ruled in favor of Associated Bank on that claim. With respect to the acts that were taken, it's very clear that Mr. Morrison knew that there was a mortgage on the property made by his mother on the property, and that he voluntarily continued to make payments on the mortgage even though he was not on the loan. And the plaintiff did not require him to make payments. Also, the statements that were sent to the property were in Ms. McShan's name. They were not in Mr. Morrison's name. And so these voluntary payments don't rise to the level of constituting a claim under the Illinois Consumer Fraud Act. Any additional questions? No questions. All right. Thank you very much. Appreciate that. All right. Rebuttal? Thank you. Justice, turning to the questions that you asked specifically on the distinction of the Shtanka case and looking at the intent surrounding the execution. In Magichek v. Magichek, the Court does employ an intent analysis and in that case, they look at the facts immediately surrounding execution. So you're right. We're supposed to look at the facts immediately surrounding execution. And then the plaintiff relies pretty heavily on Shtanka. In response to that, there is quite a few differences between the Shtanka case and the case that we have here. The reviewing court determined that the transaction wasn't testamentary as you've noted because she tried to make changes, the dispositions were not properly executed as required by law for a testamentary disposition. She relied on incorrect statements from her counselor and the testimony of which there was much about the drafting, about the conversations from her attorney and from the notary to the Court indicated that she wanted it to be testamentary. Here, Rosa McShann never tried to change the quick claim deed. She never changed the shares. She never added anyone. She never removed anyone. There's no testimony from her counsel that she intended anything but for the quick claim deed to immediately vest a remainder interest in her three children and give herself a life estate. Turning to the issue of... But if so, three mortgages, I mean the flip side, I mean if you don't think you have any control left over and you're just living in the property, how is it that she can go to the bank three different times? Well, Your Honor, life tenants are allowed to take out mortgages. They're just only allowed to have them on their life estates, right? And you mentioned yourself, Your Honor, that the whole point of that, the whole system of that is you rely on the title companies for these title reports, and the title companies stated in their title report that the owners' tenants in common were Mr. Morrison and his two siblings. If the bank now wants to say that, oh, well, back then we didn't know it was a life estate, that seems to be a concocted argument to go back and say that. Turning to delivery, as that was an issue that plaintiff raised a lot, the Supreme Court in pure oil code v. Baylor says that recording presumes delivery. In the issue of this case, the deed was recorded the day after execution. Again, turning to the immediately surrounding circumstances, the immediately surrounding facts, this deed was recorded the day after it was executed. I'd like to address the conversation about the 100-year-old cases and all of that. Now, that's quite far away from myself, but the reasons that these cases are hundreds of years old, I think in one instance it's because they're long established. The other instance is we've talked about the acts that exist now versus the acts that existed back then. In 1995, the Conveyances Act existed, and as I said in my first argument, this meets those requirements. It does not meet the Transfer on Debt Instrument Act requirements, and what I'll also add is that there is, to my knowledge, no act that specifically lays out the ability for a life tenant to have a life escape through an act. It's a remedy through common law, which is, again, why these cases are so dated and why they're long established, because it's been established through the common law the parameters by which someone can make a life tenancy for themselves and convey FISA. I'm going to interrupt you because I know you're running out of time. Justice Ballinger has asked several questions about burden of proof and affirmative defense. You heard those questions. Can you explain to me what you see as the burden of proof for both parties? The burden of proof for both parties, for the plaintiff, the burden of proof is to show, as Plaintiff's Counsel has said, that it is a lien that they have the right to enforce, free and clear of any other issues. Here we would argue that that doesn't happen because of the life estate and the burden that we must prove is the burden of showing that the quitclaim deed's construction is one where that matches our alleged construction of the deed. So we have to prove that the construction of the deed is what we are saying it is, and they have to prove that the deed is free and clear of any competing titles or to show what it is truly on. And here we would argue that it's truly only on a life estate. So the grantor's intent, who has the burden of proof as to that? Does that fall within the construction of the  Yes, Your Honor, the point of construing the deed, the cardinal goal of the court is to ascertain the grantor's intent. We believe it's clear, and we have argued it is unambiguous based on the absolute control language that informs the full use control language here and other case law cited. And the distinction between absolute and full one more time. Again, Your Honor, I would say that the distinction between absolute and full is nonexistent or that full is a lesser control than absolute. Just a brief follow-up. Counsel said in Strickland the issue of the grantor's intent was not contested. Is that correct or not? Your Honor, I have the case in front of me here. It says that so far as the exact construction of the deed I believe that is contested. I believe it's the issue the issue in the case is the construction of the deed. Thank you. Any further questions? All right. Thank you for your well-reasoned arguments. We will take this matter under advisement. We will issue an order in due course. Have a great rest of your day. Thank you.